Second case of this morning, number 15-3046, the Constitution Party of Pennsylvania et al. v. Cortes and Marks, Ms. DeSoro and Mr. Hall. Whenever you're ready. Thank you. May it please the Court, my name is Claudia DeSoro, I'm with the Attorney General's Office and I represent two officials from the Pennsylvania Department of State. I'd like to reserve three minutes for rebuttal. Sure. The fundamental problem with the District Court's declaratory judgment now being challenged is that neither Secretary Cortes nor Commissioner Marks nor any other official within the Department of State has any role in the objection process under 25 Purdon Section 2937 that the minor defense lawsuit. Counsel, what's being challenged here is a combined theory that's 2911 as well as 2937. And you don't dispute that the Secretary and Commissioner have a role to play in 2911B, right? Well, yes, but the only actual challenge to 2911 that I perceive is one that has been litigated in this case. We have, and nobody disputes, I think the District Court made that observation, the signature requirement is there. And it's true that if there were no signature requirement, there would not be anything for anybody to challenge, so there wouldn't be any objections, so there wouldn't be any costs associated with the objections. Isn't that the holding and really the effect in terms of the relief granted of the District Court's decision on the combined theory, the as-applied theory that was presented and that, as I understand it, the Commonwealth has not challenged on appeal? I'm sorry, but I think that the District Court went out of its way to say that it was not calling into question the signature requirement. The disconnect that arises as a result of the declaratory judgment is that the injury, the financial burden that the minor parties have litigated over is inflicted as a result of the challenges, objections by private parties and the Commonwealth Court's handling of those objections. But the declaratory judgment is a form of relief, it seems, that operates only against the Secretary and the Commissioner. And the Secretary and the Commissioner can't change the way other people and parties and entities make objections, nor can they change the way the Commonwealth Court processes them. But as you were describing before, they can decline to enforce the signature requirement or to collect them. They can decline to receive the objections when those are to be filed under the statute with them. And they can decline to remove the name of the minor party off the ballot. Well, wait, I think that they can't, they don't receive the objections, they're filed with the court. They do get a copy, I acknowledge, so they know about them, but they don't receive them the way the clerk's office at this court receives things. I don't think they are free to not apply the signature requirement. But where the district court has ruled that it is unconstitutional as applied in the combined effect of 2911 and 2937, are you suggesting that the Commonwealth can nonetheless proceed to enforce the statute, at least your clients, in their responsibilities, in a way that a federal court has said is unconstitutional? Well, I think what I'm trying to say is that in light of the Rogers case and in light of the general recognition that the signature requirement is valid, my clients have an obligation and they have attempted already to fulfill it by issuing the forms and so on that they have to prepare for each election cycle for everybody in Pennsylvania who wants to run for office. The minor parties are not the only ones. I can foresee a whole different set of complications and problems if my clients were to say, well, the minor parties brought this lawsuit, so they can run for office somehow and get themselves listed on the ballot without fulfilling the signature requirement in light of this decision, but the Tea Party and the Socialist Workers Party and the, you know, Free Willy Party or whoever still have to deal with the same set of circumstances that exist or existed for the minor parties. We could engage a different set of arguments if you had challenged on appeal that holding on the merits as to whether as applied in combination these two statutes were unconstitutional, but since that is not before us and the Commonwealth has opted to deal with what it describes itself as the narrow technical question of who are the right parties, isn't the only question that we have whether given the combined theory, the 2911 and 2937, whether the named parties here, the Secretary and the Commissioner, are proper parties, whether there is any relief that those parties can grant given the combined theory. And I think that the reason the appeal only challenged the question of whether these are the proper parties is because it's been our perception all along that there is no way to sue the Commonwealth officials over the alleged flaws in the objection process. If a court rules in favor of a challenger under 2937 and asks to remove acts or orders that the candidate's name be removed from the ballot, who is involved in doing that removing administratively? The result of the court decision or the court proceeding is reported to the department which has to prepare the ballots whether the candidate's petitions have been challenged or not. So whether then the defendant, your clients here, actually remove the candidate's name from the ballot? Well, if they're not put on the ballot, if there's a challenge that is upheld. So it's not removing, I don't believe. Okay, but aren't, didn't them flip it around, aren't these defendants responsible for issuing the notice directing whose names will appear on the ballot? I missed a word that you said. Aren't these defendants responsible, in other words, you're saying they're not removing because they never put on. But in the end, who actually puts the names that appear on the ballot on the ballot? Well the ballots are prepared by the Department of State, yes, if that's what you're asking. So, I mean, if these are not the right persons, who are? Well, to raise the complaint about the burdens associated with this procedure, or with any procedure really, the typical way to do it is in defense in an objection proceeding. That's a very obvious way to do it. But who are the right people? If not your clients, if they're not involved, you're saying in this particular process and they shouldn't be here, who are the right people to be here in their place? Well I don't know if anybody else could be here in their place other than the offending objectors and adjudicators. The major party candidates and their allies that bring the challenges, they could be sued independently. It would be perhaps tricky to sue the Commonwealth Court or the Prothonotary of the Commonwealth Court or something like that over the allegedly flawed procedures that are utilized in that court, but that's another possibility. The minor party's arguments from the get-go have been that Pennsylvania is unique in this way, so that we really don't have a template to follow. There is no other state, according to them, that handles the objection process the way that Pennsylvania does. But from that, it cannot follow that you can sue the state officials just because there's an election process created by statute. If the statute has a flaw in it, I'm not, I don't know if I want to concede that there is, but if there is a flaw and we're not trying to hold back anybody's right to participate in elections or anything like that, the real solution is to change the statute. And that is obviously not something that the officials within the department can do. That would be a legislative change. I know this court has the legislature does not seem to have jumped at the chance to fix it. So by not appealing the district court's constitutional analysis, in effect, is the Commonwealth agreeing with that analysis? That there's an as-applied problem here? I think the reason that we didn't, it's hard to recreate and it's hard to articulate, but the Commonwealth Well, I mean, you made a decision not to appeal the constitutional analysis. That decision, and they made it because we did not want to draw into dispute in any way the very idea that minor parties should be, you know, hemmed in and suppressed and forced to handle burdens that they say they can't handle, that are not inflicted by our officials. The real concern, frankly, was what are we supposed to do? Because the way this, the way we understand it, and the court may tell us we're wrong, unfortunately, but the way we understand what was written by the district court is we're not issuing an injunction. There is no prospective order against anybody here. All there is is a statement that the way these provisions operate is improper as applied to these particular litigants. And even though, I might say as a side note, a couple of them were parties to the Rogers case and have already been through that process. But in any case, what is the Department supposed to do? I, from Judge Krause's questions, it sounds like there's a thought that maybe the district court should have an opportunity for election in the coming cycle without going through the nomination paper, signature gathering, and so on. I would find that very extraordinary. Well, the word receipt of your 28-J letter suggesting that Commonwealth plans to go forward and proceed with business as usual, notwithstanding the district court's order, if that is affirmed on appeal, that is, that these are the correct parties, and there is standing then a declaratory judgment action saying that the combined effect, the application of these two statutes, including 2911B, as to the Secretary and the Commissioner, are unconstitutional. Is it really the Commonwealth's position that it's not going to make any changes in the way the Commissioner and the Secretary enforce 2911B? That would be extraordinary. First of all, we did not send a 28-J letter. Mr. Hall did. And he enclosed the letter that the, I believe it was signed by Chief Counsel for the Department, that transmitted the 2016 forms that are applicable to anybody, and explained the very quandary that brings us to court now, which is that as we understood the judgment of the district court, it was saying two things at the same time that we couldn't reconcile. The signature requirement is valid, but here's a declaratory judgment against the officials related to the objection process that the officials don't control. And that, to our, my client's perception, is frankly just confusing, unclear, possibly inconsistent, and doesn't make sense. Isn't there a difference between a facial challenge, a statute being facially valid, and being unconstitutional as applied, and as applied in combination with another statute? Of course there's a difference between a facial and an as-applied challenge in general. I certainly am not trying to say otherwise. And in fact, the judge, the district court judge found this statute is facially valid. And as applied ruling, though, from any situations I can come up with in my head, deals typically with a situation where the defendant is the one who has been the actor, if you will. But how do you square, then, that understanding with the letter I understood the Commonwealth to have sent to the minor parties on February 4, 2016, in the wake of the district court's opinion? Well, the letter... How do you, in light of that understanding of what as facially applied means, do you justify a letter that the sections remain a part of the Pennsylvania Election Code, and that the commissioner and the secretary, quote, are obligated to follow 25PS 2911B as usual, and intend to do so in 2016? I think that statement was a general statement pertaining to the handling of the elections in 2016 for all parties and all candidates, because the statute was upheld on its face. I mean, I read that, and correct me if I'm wrong, to suggest that you intend, that is the Commonwealth and its officers who are named parties in this, intend to proceed as they have in the ordinary course of the past. Am I wrong? In the sense that the signature requirements have been on the books and upheld in the past and still are in the broad sense, yes. So to hell with the district court's opinion? No, not... I mean, I'm trying to figure out what its effect is in your view. That's why we're here, because we don't understand its effect. That's very much why the secretary and the commissioner felt that an appeal was required here, because they did not understand the district court to be telling them that the signature requirement was kaput. They only understood that they could not change the costs requirement, or that the costs requirement may be bad, but they don't know how they can fix that problem. And if you're saying that the only way to fix that problem is to let the specific litigants in this case participate in the upcoming elections without fulfilling the signature requirement, that would be extraordinary. Thank you very much. We'll get you back on rebuttal. Thank you. Mr. Hall. Good morning. May it please the Court. Oliver Hall for the Appellee Minor Parties. It's really very simple. The signature requirement may be valid by itself, but the signature requirement has been held unconstitutional. The result... Could I start at a very pedestrian level, and that is, how do you understand, how do you interpret the district court's order here? Judge Smith, the way we interpret it is that Section 2911B, which imposes the signature requirement, is unconstitutional as applied in conjunction with Section 2937, which authorizes private parties to challenge the sufficiency of those nomination petitions. And that is consistent with the legal theory that we assert on the first page of our complaint that we have litigated throughout this case, and that is that if the Commonwealth of Pennsylvania wishes to require minor parties to submit nomination petitions with a certain number of signatures on them, that may be constitutionally valid. But what it may not do is also impose the requirement that minor parties shoulder the financial expense of validating those petitions. But that aspect, the shouldering of the financial expense, is one that's imposed by the Commonwealth Court. How is the Secretary or the Commissioner in a position to grant the relief that you seek? Well, Judge Krause, I think Judge Ambrose's question earlier got to this in part when he asked who sets aside the nomination petitions. The answer to that is the Secretary of State. That's what the term of art is. An objection is brought pursuant to Section 2937. Nomination petitions, if the challenge or if the objection succeeds, nomination petitions are set aside by the Secretary of State. So they are involved at every step of the process, even though the adjudication happens in court. Would it accord you any relief for the minor parties to be forced to go through the collection of signatures, the challenge and the cost in the Commonwealth Court, and then ultimately to say, well, these parties can grant relief because they will not set aside the names of the minor parties on the ballot? Does that really help your cause? No, Your Honor. The answer to your question is the relief needed here is that Section 2911B, the 2% signature requirement, cannot be enforced. And as a matter of fact, that is the effect of the district court's judgment. That provision has been declared unconstitutional. Now the legislature may, in addressing this case and the judgment that followed from the case, enact a new legislative ballot access requirement for minor parties. Maybe that new legislative enactment would even include a 2% signature requirement. That might be upheld as constitutionally valid as my opposing counsel has indicated was upheld in the Rogers decision. A 2% signature requirement may be valid in another context. What makes it invalid in the context of this case is that the Commonwealth is requiring the submission of the 2% amount of signatures and requiring minor parties to shoulder the expense of validating them. But if what this comes down to, if the real remedy you're seeking, and the reason you've named these parties is so that they cannot enforce 2911B, they cannot collect the signatures and that requirement is now out the window, then isn't this really just an end run around Rogers? Why isn't that achieving the same result as the facial challenge that already was rejected by the court? Judge Krauss, for the reason just given, and that is that this challenge is not a facial challenge to the 2% signature requirement. The theory, as stated on the first page of the complaint, is that Pennsylvania cannot require the 2% signature requirement and the That's what's been challenged. That's what's been declared unconstitutional. Those provisions, provided the district court's decision remains, is affirmed, those provisions cannot be enforced anymore. Now... Under what circumstances are you still required to comply with 2911B? At present, Your Honor, we don't believe that we are. And we don't even think that that's a confusing or controversial point. The fact is that that provision has been declared unconstitutional and we agree with Judge Smith. Well, under what circumstances will you still have to comply with 2937? We do not have to comply with that, Your Honor. I thought that, in effect, what the district court here said was that 2911B, in combination with 2937, as to your clients, constituted a violation as applied due process. But can you separate them? Your Honor, I believe that the legislature could enact a signature requirement that does not contain the constitutional infirmity that this present statutory scheme includes. But that's not the situation we're faced with now. So there's no signature requirement whatsoever that applies to your clients under 2911? That's correct, Your Honor. None at all? Your Honor, we are not in a position to rewrite the statute. That's for the legislature to do. The legislature has failed to act as of now. But I would note that there is a remedial enactment in place, in committee, where it's been languishing for years, that would solve this entire problem. It's called the Voter Choice Act and the legislature is free to consider it and enact it at any time. But we're not in a position to tell the legislature or the Secretary of State what they should do instead of the unconstitutional enactment that they have been enforcing for the last 10 years. Our only position is that's unconstitutional. The federal court has declared it unconstitutional and the Secretary cannot now enforce it. As I say, there is nothing wrong with the legislature going back and enacting a statutory scheme that includes a signature requirement. Maybe it even includes a 2% signature requirement. What it cannot do is require us to submit those signatures and pay to validate them. This is actually standard operating procedure when ballot access statutes are declared unconstitutional. They can't be enforced. In that circumstance, federal courts have the power to make a determination whether the plaintiffs in a case challenging a ballot access statute are entitled to ballot access in the pending election cycle. In Ohio, the Libertarian Party of Ohio case, which is actually not in our briefs, but this occurred in Ohio in 2006 and the district court ordered the Secretary of State to place the plaintiff parties on the ballot when they showed a modicum of support and that's what these parties have done. As a matter of fact, the Libertarian Party of Pennsylvania has 45,000 registered members. That is a modicum of support that should entitle this party to appear on the ballot. We may need to file for further relief in the district court to ensure that that happens, but that's only because the Secretary of State has taken this position that they're going to enforce the very provision that was declared unconstitutional in this case. Just come back with me. How do you understand the district court's decision to play out in practice? In other words, if the aspiring parties here choose to defend against the challenge under 2937, they might use the declaration that 2911 is unconstitutional as applies to prevent them from requiring so many signatures. Is that one way? You're asking if a challenge were filed in this election cycle, is one way that the parties could use the declaration that 2911B is unconstitutional as applied to prevent them from requiring so many signatures to access the ballot? Is that correct? I think that would be possible, although it's not something that I would recommend and I don't think they would respond that way. How would you respond? I would respond, Your Honor, by moving in the district court for an injunction against the private parties filing that challenge. That's what I was just about to ask you and append to Judge Ambrose's question. You have suggested that there may be a need to return to the district court and I was going to ask you, what do you contemplate would be the relief you would seek? What can you contemplate at this junction would be the relief you would be seeking from the district court? Judge Smith, certainly when this decision was handed down, we anticipated that if any challenges were filed in the absence of remedial legislation, we would be prepared to seek injunctive relief in the district court against the private parties filing those challenges. The reason is that they are seeking to invoke the authority of a statutory provision that has been declared unconstitutional. That is a very simple scenario in which there is no statutory authority for those parties to act. We have a valid judgment on the books entitling us to avoid the constitutional burdens that that provision imposes and we would be entitled to go to the district court and seek an injunction against those private parties. There may be other remedies, Your Honor. Honestly, we did not anticipate that the Secretary of State would take the position that they have to enforce a provision that has been declared unconstitutional in this case. Let me flip around 2911 and 2937. I talked to you previously if they choose to defend against a challenge under 2937. Let's start off with if they are forced to comply with 2911, could they not use the may cause them to incur costs beyond what they should in order to defend? In other words, is it 2911B or is it 2937? You could, if it starts off, you say that they are forced to comply with 2911. They would say that there is a chilling effect under 2937, right? Correct. And so either option that I just presented to you, whether you start with 2911 or you start with 2937, you are arguing that they fashion meaningful declaratory relief? That's correct, Your Honor. I think however you come at this, the remedy here is to prevent the minor parties from being forced to submit these signatures and pay to have them validated. As I was indicating previously, we don't have the power to rewrite the statute. We only have the power to challenge it. We did so, we prevailed, and therefore we are entitled to relief in whatever form it may come. And that is now going to be a fact-dependent scenario, I think, based on the position. Yeah, I'm just trying to get some precision because the declaratory judgment simply states that 2937 and 2911 are unconstitutional as applied, but don't you have to play out one of those two scenarios to get there? Well, Judge Ambrose, ordinarily, no, you would not have to. Ordinarily... How would it play out in reality? In this scenario, as I indicated, if challenges are filed under 2937, we could seek an injunction against the private parties. We may need to seek an injunction against the Secretary of State for notifying... Well, that's actually what Mr. Soros is saying to you. That's what... Do the former. Go against the private parties. All we are here are functionaries. Leave us out of this. Well, they're not functionaries. They are the elections officials that administer the statute that has been declared unconstitutional. And by the way, in every other state in the country that requires the submission of nomination petitions, they go to the Secretary of State or the similar elections officials. And those elections officials have the statutory duty to decide whether the nomination petitions are sufficient. It's only here in Pennsylvania that that duty has been outsourced to private parties who have been abusing the system for the last 10 years to the extent that Pennsylvania voters have been denied the opportunity of voting for anyone but Republicans and Democrats in statewide elections since this system came into place about 10 years ago, with the exceptions of the presidential elections that have been noted in the district court's opinion. You've decided to name only the secretary and the commissioner. How does the declaratory judgment that would be in place that the statutes are unconstitutional in combination as applied with these defendants, how does that help you with the further injunctions you're talking about as to private parties? Clearly you could go and get an injunction as to those defendants. It helps us with the private parties because section 2937 is the statute that authorizes them to file objections. That provision has been declared unconstitutional as applied to my clients and therefore no party is entitled or authorized by that statute to file an objection against my clients. So why not from the outset name the private parties or name the preponetary if that's really the gist of the relief that you're seeking? Judge Krause, this court addressed that very clearly in its prior decision, in the prior appeal in this case. It said it's not possible to do that. We don't know who the challengers will be until the challenges are filed. And we did try that. When we filed this case in May 2012, we were in the midst of our 2012 petition drives. Every single one of the parties that are plaintiffs in this case successfully submitted the signatures required by 2911B. They were all challenged. We filed a motion, an emergency motion for TRO and preliminary injunction asking to be – we said we substantially complied with the signature requirement. We're going to incur these huge burdens if we have to defend these petition drive – these challenges. And the district court didn't rule on that emergency motion for seven months. As a result of that, the Constitution Party was required to withdraw from the election and the Libertarian Party incurred something like $50,000 in out-of-pocket expenses as well as lots of other expenses incurred by allies just to successfully defend the petition challenge. So there are procedural complexities to this case. We've tried to fashion it in the way that is most obviously justiciable for the federal courts and we think we've done that. We think the district court's decision accurately reflects that. And there's really no confusion about what needs to happen now. The Secretary needs to stop trying to enforce a statute that's been declared unconstitutional. Thank you. Thank you. Thank you very much. Mr. Sorrell. As I think I heard in some of your comments to Mr. Hall, an injunction against the private parties that have made or might make future challenges, future objections would be a darn good way to get the issue – It would be like playing whack-a-mole, wouldn't it? I mean, who's behind all these? I don't – Really, who is behind all these challenges? Actually, if you read the various declarations that are in the district court record, the major parties seem to be behind them and the people acting – Meaning the incumbent candidates usually or at least a nominee of one of the major parties? Well, probably. But I don't see why, in theory, the history of this situation wouldn't justify bringing an affirmative and sort of preemptive case against the major parties to preclude them from doing the same. What about the history that Mr. Hall just referred to? That is, it becomes moot, the damage is done if there's delay of seven months or more and parties are either forced to incur pretty exorbitant costs or to withdraw and the field of candidates and parties available in our democratic system has been reduced. I think there's – they overstated a bit. I don't know about that seven-month gap, but the number of minor party candidates – there's a table in the record that describes how many petitions were submitted, sets of papers were submitted, and how many challenges there were over each year for a whole bunch of years. And there aren't all that many. I wanted to also say that the problem with saying that the signature – excuse me – that everything is only applicable because the signature requirement is linked to the objection provision is that if you interpret the law that way for these people, every other party or candidate or person would face the same sorts of objections and the same sorts of cost crunch. Another point that I think Mr. Hall made in response to our arguments was that the Secretary sets aside the petitions ultimately. And I think the Secretary is not the one that does it. The wording of the court – of the statutory provision itself is that the court shall finally determine said matter. The court makes the decision as far as who is or isn't the prevailing party in one of these objection proceedings. The standard operating procedure language that Mr. Hall mentioned is troubling as well because he says this and that is typically done at standard and so on. But the whole problem here is that we're starting from a non-standard statutory provision. He seems to pay lip service to the seminal requirement of a modicum of support, but I thought him – I heard him say that the Libertarian Party has 45,000 members and therefore that's a modicum. But that's not the only way to – in fact, that is not the way to determine modicum as I understand it. It's a question of support in terms of membership and also in terms of potential voter support on signatures on petitions. They're two components. Similarly the suggestion that in every other state that elections officials have a duty to do this, that, and the other thing, therefore the Pennsylvania officials should be required to do the same, that does not hold water because Pennsylvania's statute is different. That's what we're stuck with. I completely agree with Mr. Hall. If the legislature would decide to revise the statute, we wouldn't have this problem. But until they do, unfortunately, we do. Thank you very much. Thank you to both counsel for well presented arguments and we'll take the matter under advisement.